**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **APALACHICOLA RIVERKEEPER, et al.,** **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **No. 12-337** |
| **TAYLOR ENERGY COMPANY, LLC,** **Defendant** | **SECTION "E"** |

### ORDER AND REASONS

Before the Court is defendant Taylor Energy Company LLC's ("Taylor") Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and Alternative Motion to Stay.[1]  For the reasons set forth below, Taylor's motion is granted in part and denied in part.

### BACKGROUND

In September 2004, a mudslide triggered by Hurricane Ivan destroyed a number of oil wells owned by Taylor.  The force of the winds and storm surge caused the wells to become detached from Taylor's Mississippi Canyon 20A Platform in the Gulf of Mexico, and both the wells and the platform sank to the bottom of the sea and were buried in mud.  Oil has been leaking from the site ever since.  After the storm, Taylor, along with the United States Coast Guard, has been working to clean up the spill.  The plaintiffs, comprised of the Louisiana Environmental Action Network ("LEAN")[2] and a group of so-called

---

[1] R. Doc. 37.  As will be explained in the Procedural History section, the Court is considering only Taylor's motion to dismiss pursuant to Rule 12(b)(1) at this time, having severed the standing issue from the merits issues involved with Taylor's motion to dismiss pursuant to Rule 12(b)(6).  Taylor's motion to dismiss also included an alternative prayer for a stay; the Court is not considering Taylor's request for a stay at this time.

[2] LEAN is a Louisiana non-profit corporation with its principal place of business in the State of Louisiana.  *See* R. Doc. 29-5.

"Waterkeepers"[3] brought suit against Taylor with the assistance of the Tulane Environmental Law Clinic, alleging that Taylor has allowed oil to leak from the site of the Mississippi Canyon 20A Platform since September 2004, and has done so without a Clean Water Act permit.  While LEAN and the Waterkeepers do not dispute the Coast Guard's involvement in the cleanup of the spill, they say that Taylor is not doing enough to fix the problem, and that what has been done has taken much too long.  LEAN and the Waterkeepers also say that Taylor has not been forthcoming with them about the status of the cleanup.

## PROCEDURAL HISTORY

LEAN and the Waterkeepers filed this Clean Water Act ("CWA") and Resource Conservation and Recovery Act ("RCRA") citizen suit on February 2, 2012.[4] LEAN and the Waterkeepers filed an amended complaint on March 13, 2012,[5] and after being granted an extension of time to respond, Taylor filed a motion to dismiss this case for lack of standing and for failure to state a claim on April 25, 2012.[6]  This first motion to dismiss sought, in the alternative, to stay this case in favor of letting the Coast Guard deal with the spill.  On

---

[3] The Apalachicola Riverkeeper is a Florida non-profit corporation with its principal place of business in Florida.  R. Doc. 29 at ¶14; *see also* R. Doc. 29-4.  Atchafalaya Basinkeeper and the Louisiana Bayoukeeper are Louisiana non-profit corporations with their principal places of business in Louisiana.  R. Doc. 29 at ¶ 15 and ¶ 17.  The Galveston Baykeeper is a Texas non-profit corporation with its principal place of business in Texas.  R. Doc. 29 at ¶ 16.  The Lower Mississippi Riverkeeper is a program of and an association within LEAN.  R. Doc. 29 at ¶ 19; *see also* R. Doc. 29-2.  The Apalachicola Riverkeeper, Atchafalaya Basinkeeper, Louisiana Bayoukeeper, Galveston Baykeeper, and the Lower Mississippi Riverkeeper, as a part of LEAN, are all members of the Waterkeeper Alliance.  The Waterkeeper Alliance is a New York non-profit corporation with its principal place of business in New York.  R. Doc. 29 at ¶20; *see also* R. Doc. 29-6.  For ease of reference, the Court refers to these six groups collectively as the "Waterkeepers" or the "Waterkeeper Plaintiffs."

[4] R. Doc. 1.

[5] R. Doc. 8.

[6] R. Doc. 15.

May 18, 2012, LEAN and the Waterkeepers filed a motion for summary judgment on the issue of standing, seeking an affirmative legal determination that they have standing to bring this action.[7] Taylor then filed a motion to stay the summary judgment motion until Taylor's motion to dismiss could be heard.[8]

On June 8, 2012, the Court granted Taylor's motion to stay the summary judgment motion, and ordered LEAN and the Waterkeepers to amend their complaint to remedy the issues raised by Taylor's first motion to dismiss.[9] The motion to dismiss was denied without prejudice.[10] The Waterkeepers filed a second amended complaint that same day.[11]

On June 26, 2012, Taylor filed a second motion to dismiss for lack of standing and failure to state a claim, and in the alternative for a stay.[12] On July 3, 2012, the Court held a status conference, and ordered that Taylor's motion to dismiss pursuant to Rule 12(b)(1) (for lack of standing) be severed from Taylor's motion to dismiss pursuant to Rule 12(b)(6) (for failure to state a claim).[13] The Court ordered LEAN and the Waterkeepers to respond only to Taylor's standing arguments in their opposition to Taylor's motion to dismiss, and continued Taylor's motion to dismiss for failure to state a claim without date. LEAN and the Waterkeepers filed their opposition to Taylor's motion to dismiss for lack of standing

---

[7] R. Doc. 22.

[8] R. Doc. 23.

[9] R. Doc. 28.

[10] *Id.*

[11] R. Doc. 29.

[12] R. Doc. 37.

[13] R. Doc. 40 (Minute Entry from July 3, 2012 Status Conference).

3

on July 24, 2012,[14] and Taylor filed a brief reply memorandum in further support of its motion to dismiss on August 3, 2012.[15] On August 15, 2012, the Court heard oral argument on Taylor's motion to dismiss for lack of standing.[16]

### ARGUMENTS OF THE PARTIES

### I.      Taylor's Motion

Taylor argues that LEAN and the Waterkeepers lack standing to bring this action in federal court because, even though they are on their second amended complaint and were given a chance to amend their first amended complaint to remedy possible standing issues, they have not met their burden of proving standing, which is measured at the time the complaint is filed.  Taylor argues that LEAN and the Waterkeepers have not alleged or provided any evidence of facts showing concrete or particularized injuries-in-fact, or any actual, imminent injuries.  Taylor also argues that, because the Coast Guard is actively dealing with the spill, an Order from this Court would not redress the Waterkeepers' claimed injuries as they are already being redressed.  Taylor argues that the claims in the complaint are conclusory, speculative allegations of generalized harm to the environment, which are insufficient for standing purposes.  Taylor also argues that, because individual members of LEAN and the Waterkeepers lack standing, the organizations lack standing.

### II.     The Waterkeepers' Opposition

LEAN and the Waterkeepers oppose Taylor's standing arguments.  They argue that standing requires only that a plaintiff have a "direct stake in the outcome" of a lawsuit

---

[14] R. Doc. 48.

[15] R. Doc. 51.

[16] R. Doc. 52.

against an alleged discharger of pollutants into a body of water.  They claim that aesthetic, environmental, or recreational interests in a body of water, coupled with a reasonable concern that a discharge might harm those interests, satisfies the standing requirement. They also argue that only one plaintiff has to establish standing for the suit to go forward, contradicting Taylor's assertion that at least one member of each plaintiff organization has to be able to establish standing.  Plaintiffs assert the declarations of Scott Porter, Paul Orr, and Arthur Tonsmiere,[17] which are attached to the Second Amended Complaint, are more than sufficient to establish standing for all plaintiffs.

### III.   Taylor's Reply

Taylor's reply is largely a rehashing of its original motion to dismiss.  Taylor does not believe that standing for one plaintiff will suffice to show standing for all.  Instead, Taylor argues that by providing standing evidence for only certain organizations, LEAN and the Waterkeepers have conceded the claims of the others should be dismissed.  Taylor also contends that the Waterkeepers' opposition pleading contains more detail than is actually included in the attached declarations and that this attempt to "beef up" what Taylor considers bare allegations in the declarations is inappropriate.

## ANALYSIS

### I.   12(b)(1) Motion to Dismiss Standard

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*,  281 F.3d 158, 161 (5th Cir. 2001) (citing FED. R. CIV. P.

---

[17] Unlike most motions to dismiss, a Court faced with a motion to dismiss for lack of standing can look beyond the face of the complaint to determine its jurisdiction.  *See Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001).

12(b)(1)).  "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.* (citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction . . . Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Id.* (internal citations omitted).  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## II.   Standing

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders*, 143 F.3d at 1010.  Accordingly, the Court must determine whether LEAN and the Waterkeepers have standing to bring this CWA and RCRA citizen suit against Taylor.   The standing requirement comes from the requirement in Article III of the United States Constitution that a "case or controversy" exist before a federal court can hear a case. U.S. Const. Art. III, § 2, cl. 1.   In this case, LEAN and the Waterkeepers seek to represent the interests of their members.   "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the*

6

*Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)).  To satisfy the first requirement for associational standing - that an individual member of the association has standing to sue in their own right - each plaintiff must show that at least one individual member of that association meets the following requirements: (1) he or she has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) his or her injury is "fairly traceable to the challenged action of the defendant"; and (3) "it is likely, as opposed to merely speculative, that [his or her] injury will be redressed by a favorable decision." *Laidlaw*, 528 U.S. at 180-81 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Texans United for a Safe Economy Educ. Fund v. Crown Cent. Petroleum*, 207 F.3d 789, 792 (5th Cir. 2000).

### III.   Individual Members of LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper Have Standing to Sue in their Own Right

#### A.   "Injury in Fact"

The first requirement to show members of an association or organization would have standing to sue in their own right is that those members have suffered an "injury in fact." "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Laidlaw*, 528 U.S. at 183 (citing *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972); *Lujan*, 504 U.S. at 562-63)); *see also Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009) ("While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational

or even the mere esthetic interests of the plaintiff, that will suffice" to establish the injury in fact requirement).

Plaintiffs have presented the Court with the sworn declarations of three individuals: Arthur Tonsmiere, Paul Orr, and Scott Porter. Taylor argues the second amended complaint, and specifically, the declarations of Tonsmiere, Orr, and Porter, are merely generalized concerns about the environment, and that the declarants' fears about the effect of the spill on the Gulf are unreasonable.  Taylor also argues that the concerns raised by the declarants are to the Gulf of Mexico as a whole, and not a specific area, and thus the declarants are merely concerned bystanders.

Taylor is correct that "[t]he relevant showing for purposes of Article III standing . . . is not injury to the environment but injury to the plaintiff." *Laidlaw*, 528 U.S. at 181. However, Taylor is overstating the plaintiffs' burden at this stage in the proceedings.  The declarations of Tonsmiere, Orr, and Porter all very clearly show that the three men use the area of the Gulf of Mexico near Taylor's spill for work and recreation, and that the spill is affecting those personal and professional interests.[18]   Likewise, all three have clearly indicated that, in their view, the recreational and aesthetic value of the area has been lessened as a result of the spill.  *See Laidlaw*, 528 U.S. at 183.

Porter, a member of LEAN, declared that he is unable to scuba dive - an integral part of his job as an investigative biologist - near the former Taylor well site for fear of exposure to toxins associated with oil.[19]   Porter also states that he fears Taylor's spill will have a

---

[18] *See* R. Doc. 29-1 (Porter); R. Doc. 29-2 (Orr); R. Doc. 29-3 (Tonsmiere).

[19] R. Doc. 29-1 at ¶¶ 6-10.

lasting negative impact on the marine ecosystem in and around the spill site.[20]   Orr, a member of LEAN and the Waterkeeper Alliance, tasked with ensuring pollution in the Gulf does not impact the water quality or the ecosystem of the Mississippi River Delta, has declared his fear that oil from Taylor's spill is affecting and will continue to affect the water quality and ecosystem of the Delta, the mouth of which is 11 miles from the spill site.[21] Orr's declaration also states that he uses the area near the spill for educational purposes, but is concerned that the oil in the water will splash up and come into contact with the eyes, skin, and mouth of himself and of the various student and journalist groups for which he leads boat tours.[22] Additionally, Orr's declaration expresses concern about the fish and wildlife in the area as a result of the spill and about his continued enjoyment of the recreational hobby of flying small aircraft over the site.[23] Tonsmiere's declaration is similar to Porter's and Orr's. Tonsmiere, a member of the Apalachicola Riverkeeper, is an avid fisherman, but he states in his declaration that he is concerned that Taylor's spill will prevent the Cobia, his preferred species of fish, from migrating, thus preventing him from being able to fish for them.[24] Tonsmiere also expresses concern that Taylor's spill will affect his real estate business and the marine environment in the Gulf.[25] These declarations, coupled with the allegations in the Waterkeepers' second amended complaint, are sufficient to meet the

---

[20] *Id.* at ¶ 11.

[21] R. Doc. 29-2 at ¶¶ 4-5, 8, 9, and 11.

[22] *Id.* at ¶¶ 11-16.

[23] *Id.* at ¶¶ 11, 17-18.

[24] R. Doc. 29-3 at ¶¶ 4, 6, and 8.

[25] *Id.* at ¶¶ 9, 11.

"injury in fact" requirement for Article III standing for LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper, and Taylor's arguments to the contrary are unavailing.[26]

Taylor directs the Court's attention to *Friends of the Earth v. Crown Central Petroleum Corp.*, 95 F.3d 358 (5th Cir. 1996), in which the court found a plaintiff lacked standing to sue under the CWA regarding discharges to a creek because none of the plaintiff's members used that creek. In that case, the declarants were people "who birdwatch and fish at a lake some 18 miles and three tributaries from the source of unlawful water pollution." *Id.* at 359. The case before this Court is clearly distinguishable. In this case, the declarants recreate and work in the Gulf and in bodies of water directly adjacent to the Gulf, and despite the fact that those sites are up to 11 miles away from the spill site, the declarants have clearly alleged, and provided adequate documentary evidence, that the

---

[26] Plaintiffs have not presented the Court with any evidence to show any individual member of the Atchafalaya Basinkeeper, the Galveston Baykeeper, or the Louisiana Bayoukeeper would have standing to bring this citizen suit on his or her own behalf. While the Court does not doubt this suit may be germane to the purposes of those organizations, that alone is not enough to meet the associational standing requirement. Plaintiffs argue that, because they have shown standing with respect to some organizations, all of the named plaintiff organizations should be considered to have standing, but this misunderstands the rules for associational standing. It is true that an organization need only show that one of its members would have standing to bring a lawsuit on his or her own for the organization to have standing to bring suit on behalf of all of its members, *Laidlaw*, 528 U.S. at 180-81, but this does not extend to related organizations. While a single plaintiff will suffice for the Court to have standing to hear this case, that does not obviate the need for each of the plaintiff organizations to show that it has standing independent from the other plaintiff organizations. By failing to submit any proof that their individual members would have standing to bring this suit on their own behalves, the Atchafalaya Basinkeeper, the Galveston Baykeeper, and the Louisiana Bayoukeeper have failed to meet their burden of demonstrating they have associational standing to bring this suit. Accordingly, the claims of these three organizations must be dismissed for lack of subject matter jurisdiction. In addition, with respect to the Lower Mississippi Riverkeeper, other than a vague statement of the project's mission, the Waterkeeper Plaintiffs have not provided the Court with evidence of any membership structure or any evidence relating to the legal status of the project. Instead, the plaintiffs explain that the Lower Mississippi Riverkeeper is a project of and association within LEAN and that LEAN serves as the "manager" of the association. *See* R. Doc. 29 at ¶ 19; *see also* R. Doc. 29-2. The Court recognizes that corporate formalities are not a requirement for constitutional standing, but it appears from the record that the Lower Mississippi Riverkeeper does not enjoy any legal status independent of LEAN. The Court has found LEAN has associational standing to bring this suit, and LEAN, as the manager of the Lower Mississippi Riverkeeper project, will adequately represent the interests of its own project. Accordingly, the Lower Mississippi Riverkeeper does not have standing to bring this lawsuit, and must be dismissed as a plaintiff in this action.

spill is directly affecting their interests.

Taylor also argues that the declarants' complaints are really concerns about the health of the Gulf as a whole, and that such generalized grievances do not constitute standing. However, Taylor's argument does not pass muster, and the declarations are specific enough to defeat Taylor's motion to dismiss. While the declarants do not live next to the spill site, and do not always work or recreate near the site, the injury in fact requirement does not require such a showing. *See Laidlaw*, 528 U.S. at 181-82. In *Laidlaw*, the Supreme Court specifically found the following allegations and statements to be sufficient for injury in fact purposes:

- An individual stated that he lived a half-mile from defendant's facility and occasionally drove over the polluted river. He claimed that the river "looked and smelled polluted and that he would like to fish, camp, swim, and picnic in and near the river between 3 and 15 miles downstream from the facility, as he did when he was a teenager, but would not do so because he was concerned that the water was polluted" by defendant's discharges.
- An individual said that he "would like to fish in the river at a specific spot he used as a boy, but that he would not do so now because of his concerns" about defendant's discharges.
- An individual explained that she lived two miles from defendant's facility, and that before the defendant started operating the facility, she "picnicked, walked, birdwatched, and waded in and along the river because of the natural beauty of the area, but she no longer engaged in these activities in or near the river because she was concerned about harmful effects from discharged pollutants." She also stated that she and her husband would like to purchase a home near the river but, in part because of defendant's discharges, did not intend to do so.
- An individual stated that she lived one-quarter mile from defendant's facility and "would like to fish, hike, and picnic along the river, but has refrained from those activities" because of the discharges.
- An individual attested that she lived 20 miles from the defendant's facility, and would "use the river south of the facility and the land surrounding it for recreational purposes were she not concerned that the water contained harmful pollutants."
- An individual testified that she would "hike, picnic, camp, swim, boat, and drive near or in the river were it not for her concerns about illegal discharges."

- An individual attested that her home, which was near defendant's facility, had a "lower value than similar homes located farther from the facility, and that she believed the pollutant discharges accounted for some of the discrepancy."
- An individual stated that he had canoed approximately 40 miles downstream of the defendant's facility and "would like to canoe in the river closer to the facility's discharge point, but did not do so because he was concerned that the water contained harmful pollutants."

28 U.S. at 181-82. The allegations contained in the Porter, Orr, and Tonsmiere declarations are all very similar to the *Laidlaw* plaintiffs' allegations, which the United States Supreme Court found to be sufficient for injury in fact purposes, and thus the Court finds those allegations adequate to show injury in fact.

In support of its argument about the size of the Gulf, Taylor directs the Court's attention to *Summers*, another case in which the court found a plaintiff lacked standing to sue in an environmental case. Taylor argues this case falls into this same fact pattern as *Summers*, and would have this Court reject the declarants' obvious connection to the Gulf, and more specifically, to the area around the spill site, because of the size of the Gulf. In *Summers*, a group of environmental organizations sued the United States Forest Service ("USFS") to prevent the USFS from enforcing federal regulations exempting certain small fire-rehabilitation and timber-salvage projects from the normal notice, comment, and appeal process used for bigger land management issues. 555 U.S. at 490. The suit was instigated by the USFS' decision that a particular project was so exempt, but the parties eventually settled their differences with respect to this one particular project. *Id.* at 491. Even still, the plaintiffs pressed on with their broader challenge to the regulations, and, over the USFS' objection that plaintiffs lacked standing, the district court proceeded to rule on the merits of the plaintiffs' claim. *Id.* at 491-92. The Supreme Court found that the plaintiffs lacked standing, noting that "the regulations under challenge . . . neither require

12

nor forbid any action on the part of respondents," but instead "govern only the conduct of Forest Service officials engaged in project planning," and thus plaintiffs could only demonstrate standing if they could show that application of the challenged regulations affected them directly or were about to affect them directly. *Id.* at 493-94. The Supreme Court determined the plaintiffs could not meet this burden, as they could not identify any way the application of the challenged regulations threatened the members of the organizations with imminent and concrete harm. *Id.* at 495. The Supreme Court specifically rejected plaintiffs' argument that the fact that a member had visited a number of forests in the past and had a vague, "some day" intention to visit other "unnamed " forests in the future was sufficient for standing purposes; the Court stated that to find standing in this situation would be "tantamount to eliminating the requirement of concrete, particularized injury in fact." *Id.* at 497. The Supreme Court held that the plaintiffs' vague allegations, which were not supported by facts and amounted to nothing more than an aspirational goal to visit areas "roughly in the vicinity" of USFS project sites, were not sufficient for standing purposes. *Id.* at 499-500.

Essentially, Taylor argues that because the declarants allege harm to the Gulf as a whole, but the declarants do not visit every part of the Gulf regularly, nor do they plan to do so, the plaintiffs with which they are affiliated cannot be found to have standing. The Court rejects this argument and finds the facts of *Summers* distinguishable from the facts in this case. Like the plaintiffs in *Laidlaw*, the declarants in this case have provided the Court with detailed affidavits explaining how they use the affected area and how often, and how the spill has affected their continued use of the area. The Gulf's size does not change the fact that the declarants in this case have sufficiently alleged a particularized injury in

13

fact to a particular area of the Gulf.  Likewise, the declarants' complaints about the spill site are certainly more than generalized grievances about the health of the entire Gulf.

The declarants in this case previously used the area near the site, but, as a direct result of the spill, the declarants have reduced their use of that site.  This is all that is required to sufficiently allege an injury in fact under controlling Supreme Court precedent. The Court finds that Porter, Orr, and Tonsmiere all have alleged specific, particularized injuries to their continued ability to work and recreate in the Gulf near Taylor's spill site. Accordingly, the first requirement for Article III standing has been met with respect to these three individuals.

### B.   "Fairly Traceable"

The second requirement for a member of an association or organization to have standing to sue in his or her own right is that the injuries he or she complains of be "fairly traceable" to the defendant's actions.  In a citizen suit under the Clean Water Act, this requirement is met by establishing that "'a defendant has (1) discharged some pollutant in concentrations greater than allowed by its permit (2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs.'" *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp*, 95 F.3d at 360-61 (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 557 (5th Cir.), *cert. denied*, 519 U.S. 811 (1996); *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3rd Cir. 1990)).

Taylor does not seriously dispute that Tonsmiere, Porter, and Orr allege an injury that is fairly traceable to Taylor's spill.  However, Taylor does argue in its reply that the

declarations refer to time periods after the BP Deepwater Horizon oil spill, and thus the oil sheens witnessed by Porter, Tonsmiere, and Orr might not even be attributable to Taylor's spill at all.  However, a plaintiff in a citizen suit need not show that a defendant's pollutants are the sole cause of an injury, but rather that "the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs." *Cedar Point Oil*, 73 F.3d at 557; *see also Texans United*, 207 F.3d at 793; *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d at 361.  As the Fourth Circuit explained in *Piney Run Pres. Ass'n v. County Comm'rs of Carroll County*, 268 F.3d 255, 263-64 (4th Cir. 2001), "[t]raceability does not mean that plaintiffs must show to a scientific certainty that defendant's [pollution] caused the precise harm suffered by the plaintiffs. Rather, a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged."  Likewise, "the 'fairly traceable' element does not require that the plaintiffs 'show to a scientific certainty that defendant's effluent, and defendant's effluent alone, caused the precise harm to the plaintiffs.'"  *Save Our Comty. v. EPA*, 971 F.2d 1155, 1161 (5th Cir. 1992) (quoting *Powell Duffryn*, 913 F.2d at 72; *Natural Resources Defense Council, Inc. v. Watkins*, 954 F.2d 974, 980 n. 7 (4th Cir. 1992))

The Waterkeepers' second amended complaint and the attached declarations clearly allege that Taylor's spill - a spill which Taylor does not dispute is ongoing - is at least contributing to the injuries alleged.  Accordingly, the "fairly traceable" requirement for Article III standing has been met for Tonsmiere, Porter, and Orr.

### C.    Redressability

The final requirement to show an association's members have standing to sue in their own right is redressability; that is, that the individual member can demonstrate that

his or her injuries are "likely to be redressed by a favorable decision." *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41 (1976). Under RCRA and the CWA, "[a]n injunction is an appropriate remedy because it will abate or deter future illegal conduct." *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 673 (E.D. La. 2010) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998); *Powell Duffryn*, 913 F.2d at 73). Likewise, federal courts are authorized to issue civil penalties in these types of cases, "to the extent that they encourage defendants to discontinue current violations and deter them from committing future ones." *Laidlaw*, 528 U.S. at 186. While plaintiffs in RCRA and CWA citizen suits do not have standing to seek civil penalties for "wholly past violations," *id.* at 188 (citing *Steel Co.*, 523 U.S. at 106-07), they do have standing to seek penalties for violations that are ongoing and could continue into the future if not deterred. *Id.* at 188. Finally, as recognized by Taylor, "[a]n injury is not redressable by a citizen suit when the injury is already being redressed." *In re Oil Spill by Oil Rig Deepwater Horizon*, 792 F. Supp. 2d 926, 930 (E.D. La. 2011) (internal citations omitted). "Further, an injury is not redressable for purposes of Article III standing when a claim depends on the actions of actors not before the court." *Id.* (internal citations omitted).

Taylor argues that because the Coast Guard is monitoring Taylor's cleanup activities with respect to the spill, the injuries complained of in the Waterkeepers' second amended complaint are not redressable. In support, Taylor cites Judge Barbier's statement in the *Deepwater Horizon* case that an injury is not redressable if it is already being redressed. *Id.* at 930. However, that case is easily distinguishable from the case at bar. At the time of Judge Barbier's statement in the *Deepwater Horizon* case, the damaged well was no longer leaking oil, and Judge Barbier held that the injunctive relief sought by plaintiffs would serve

16

no purpose.  *Id.* at 930 and n. 1.  In this case, however, oil is still leaking from Taylor's damaged well.  Also, while it is true that the Coast Guard is involved in the cleanup process, the injunctive relief and civil penalties sought by plaintiffs would redress the injuries complained of by Porter, Orr, and Tonsmiere in a way the Coast Guard never could.  The Coast Guard's involvement in the case may, at some point, affect the relief awarded to the plaintiffs, but for purposes of Article III standing, the Coast Guard's involvement is essentially irrelevant.[27]  Porter, Orr, and Tonsmiere have all established the "redressability" requirement by showing that a favorable decision by this Court would serve to redress the injuries they allege are being caused by Taylor's spill.

Accordingly, the Court finds that Tonsmiere, Porter, and Orr would have standing to bring this citizen suit in their own right.

## IV.   The Interests LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper  Are Seeking to Protect are Germane to their Organizational Purposes

Now that the Court has determined that individual members of LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper would have standing to bring this citizen suit on their own behalves,  the Court turns to the question of whether the interests these three organizations are seeking to protect with this lawsuit are germane to each organization's "organizational purpose."  The Court finds this requirement has been met for all three organizations.

"The germaneness requirement helps ensure that an association, through its goals and purposes, will have a sufficient interest in the outcome of litigation to serve as the

---

[27] As LEAN and the Waterkeepers note, Taylor appears to be conflating the redressability requirement and the merits of the plaintiffs' case.  The plaintiffs do not have to show at this point in the proceedings that they will win, just that they have alleged facts that show they have standing to bring suit.

defendant's natural adversary." *Concerned Citizens*, 686 F. Supp. 2d at 673-74 (citing *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 555-56 (1996); *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 58-59 (D.C. Cir. 1988)) "An association's purpose thus may not be all-encompassing, but there is no requirement that it be narrow or specific." *Id.* (citing *Hosp. Council of Western Penn. v. City of Pittsburgh*, 949 F.2d 83, 88 (3d Cir.1991); *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998); *Humane Soc'y*, 840 F.2d at 58-59).

As clearly evidenced by the second amended complaint[28] and the attached "organizational purpose" declarations,[29] the Court finds that LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper are environmental organizations concerned with the protection of the water quality, ecosystem, and general well-being of the Gulf, as well as the environment as a whole.[30]  In addition, the Court finds that the three organizations maintain a sufficient level of organization for associational standing purposes because the

---

[28] *See* R. Doc. 29 at ¶¶ 14-20 (stating each plaintiff's organizational purpose and mission).

[29] In addition to the fact declarations of Porter and Tonsmiere, plaintiffs have also supplied the Court with organizational purpose declarations from Dan Tonsmiere, the executive director of Apalachicola Riverkeeper, R. Doc. 29-4, Marylee Orr, the executive director of LEAN, R. Doc. 29-5, and Justin Bloom, the eastern regional director of the Waterkeeper Alliance.  R. Doc. 29-6.

[30] In the second amended complaint, the Waterkeeper Plaintiffs describe LEAN's mission as being "to preserve and protect the state's land, air, water, and other natural resources, and protect the organization's members and other Louisiana residents from pollution threats."  R. Doc. 29 at ¶ 18.  Marylee Orr's organizational purpose declaration confirms this mission.  *See* R. Doc. 29-5.  According to the complaint, the Apalachicola Riverkeeper's mission is "to provide stewardship and advocacy for the protection of the Apalachicola River and Bay, its tributaries and watersheds, in order to improve and maintain the environmental integrity or these waterways . . .  [and] to preserve their natural, scenic, recreational, and commercial fishing character.  R. Doc. 29 at ¶ 14.  Dan Tonsmiere's organizational purpose declaration confirms this mission.  *See* R. Doc. 29-4.  Finally, according to the complaint, the Waterkeeper Alliance's mission is to "provide[]a way for communities to stand up for their right to clean water and for the wise and equitable use of water resources, both locally and globally," and the "vision of the Waterkeeper movement is for fishable, swimmable, and drinkable waterways worldwide."  R. Doc. 29 at ¶ 20.  Justin Bloom's organizational purpose declaration confirms this mission and vision.  *See* R. Doc. 29-6.

groups' individual members "possess sufficient indicia of membership" in the groups, such that the organizations provide a means for their members to "express their collective views and protect their collective interests." *Concerned Citizens*, 686 F. Supp. 2d at 675.

This lawsuit, which seeks to abate oil pollution in the Gulf and restore the area to the way it was before oil starting spilling from Taylor's wells, is clearly related to the organizational purposes of LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper. The Court finds the germaneness requirement has been met in this case for these three organizations.

### V. Neither the Claims Asserted Nor the Relief Sought Require the Participation of an Individual Waterkeeper Member

Finally, the Court moves to the final requirement for associational standing; that is, that neither the claims asserted nor the relief sought require the participation of an individual waterkeeper member. "The purpose of the third associational standing requirement is to avoid cases in which the fact and extent of injury requires members to submit individualized proof." *Concerned Citizens*, 686 F. Supp. 2d at 678 (internal citations omitted). In this case, plaintiffs are seeking injunctive relief and civil penalties. Neither requires that any individual member of one of the organizations submit individualized proof, as "both are . . . properly resolved in a group context." *Hunt*, 432 U.S. at 344; *see also United Food*, 517 U.S. at 546; *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Refining, L.L.C.*, 354 F. Supp. 2d 697, 701 (E.D. La. 2005). Accordingly, plaintiffs have met their burden of establishing that this lawsuit does not require the participation of their individual members.

## CONCLUSION

LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper all have established the three requirements for associational standing to bring this citizen suit against Taylor.  They have provided the Court with documentary evidence indicating that each has at least one individual member who would have standing to bring this suit on his or her own behalf; they have clearly shown the interests they seek to protect are germane to their purposes as organizations; and they have shown this suit does not require the participation of any individual member of any of the organizations.  Taylor's motion to dismiss the claims of these three organizations for lack of standing must be denied.

Accordingly, **IT IS ORDERED** that Taylor's Motion to Dismiss for lack of standing be and hereby is **GRANTED IN PART** and **DENIED IN PART.**

Specifically, **IT IS FURTHER ORDERED** that Taylor's Motion to Dismiss for lack of standing be and hereby is **DENIED** with respect to LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper.

**IT IS FURTHER ORDERED** that Taylor's Motion to Dismiss for lack of standing be and hereby is **GRANTED** with respect to the Atchafalaya Basinkeeper, the Galveston Baykeeper, the Louisiana Bayoukeeper, and the Lower Mississippi Riverkeeper.

**IT IS FURTHER ORDERED** that the Atchafalaya Basinkeeper, the Galveston Baykeeper, the Louisiana Bayoukeeper, and the Lower Mississippi Riverkeeper be and hereby are **DISMISSED** as plaintiffs in this case for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that LEAN, the Waterkeeper Alliance, and the Apalachicola Riverkeeper shall file any response to Taylor's pending motion to dismiss this case pursuant to Rule 12(b)(6) no later than **fourteen (14) days** after the entry of this

Order.  The three remaining plaintiffs shall also respond to Taylor's request for a stay at this time.

       **IT IS FURTHER ORDERED** that the pending "Motion for a Ruling To Resolve the Rule 12(b)(1) (Subject Matter Jurisdiction) Issues in Defendant's Motion to Dismiss"[31] filed by plaintiffs be and hereby is **DISMISSED AS MOOT.**

       **New Orleans, Louisiana, this** <u>3rd</u> **day of May, 2013.**

                                       **SUSIE MORGAN**
                    **UNITED STATES DISTRICT JUDGE**

---

[31] R. Doc. 65.

21