UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **APALACHICOLA RIVERKEEPER, ET AL.,**  Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-337** |
| **TAYLOR ENERGY COMPANY, LLC,**  Defendant | **SECTION: "E" (4)** |

### ORDER AND REASONS

This is a citizens suit under the Clean Water Act ("CWA")[1] and the Resource Conservation and Recovery Act ("RCRA").[2] The remaining Plaintiffs are Apalachicola Riverkeeper ("Apalachicola"), Louisiana Environmental Action Network ("LEAN"), and Waterkeeper Alliance ("Waterkeeper").[3] They allege Taylor Energy Company, LLC ("Taylor") has violated the CWA and RCRA by discharging oil into the Gulf of Mexico without a permit from wells connected to Taylor's Mississippi Canyon 20 ("MC-20") platform.

Taylor has moved for summary judgment, arguing Plaintiffs lack the requisite standing to maintain this suit.[4] Plaintiffs can survive this motion if they establish a genuine issue of material fact as to each of the following: (1) at least one member of each Plaintiff has standing to sue in his or her own right; (2) the interests each Plaintiff seeks to protect are germane to its organizational purpose; and (3) neither the claims asserted nor the relief requested requires the participation of Plaintiffs' members.[5]

---

[1] 33 U.S.C. § 1365.
[2] 42 U.S.C. § 6972.
[3] The Court previously dismissed the other Plaintiffs. *See* R. Doc. 66.
[4] R. Doc. 149.
[5] *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Taylor has not disputed the third element. Therefore, the Court does not address it here.

1

For the following reasons, the motion is DENIED.  There are genuine issues of material fact that must be resolved at trial.

## BACKGROUND

This is the second time Taylor has challenged standing.  The first challenge occurred almost three years ago in the form of a motion to dismiss under Rule 12(b)(1).[6]  In connection with that motion, the Court reviewed the second amended complaint and the affidavits of three purported members of Plaintiffs—Scott Porter ("Porter"), Paul Orr ("Orr"), and Arthur Tonsmeire ("Tonsmeire").[7]  Accepting the allegations as true, the Court denied the motion to dismiss.[8]

Approximately two years later, Taylor re-urged its standing argument, this time in the form of a motion for summary judgment.  Taylor contends the circumstances have changed since the Court's previous ruling.  The parties have conducted discovery, and Taylor has deposed Porter, Orr, and Tonsmeire.  Taylor contends the deposition testimony contradicts the attestations in the affidavits.  With the veracity of the affidavits fatally compromised, Taylor contends there is no genuine issue of material fact regarding Plaintiffs' inability to establish associational standing through Porter, Orr, and Tonsmeire.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9]  A genuine dispute exists "if the evidence is such that a reasonable jury

---

[6] R. Doc. 37.
[7] The affidavits were attached to the complaint.  *See* R. Doc. 29.
[8] R. Doc. 66.
[9] Fed. R. Civ. P. 56(a).

2

could return a verdict for the non-moving party."[10]  The Court reviews the evidence in the light most favorable to the non-moving party,[11] mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."[12]

## DISCUSSION

Taylor contends Apalachicola, LEAN, and Waterkeepers lack standing to pursue their claims in federal court.  The doctrine of standing derives from Article III of the Constitution, which limits the jurisdiction of federal courts to "Cases" and "Controversies."[13]  A case is not justiciable unless the plaintiff has standing to sue.[14]  An organization has standing to bring suit on behalf of its members when (1) at least one member would otherwise have standing to sue in his or her own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[15]  The Court examines each element in turn.[16]

## I.  Whether Plaintiffs' Members Have Individual Standing

Because organizations derive associational standing from their members, the threshold inquiry is whether the organization actually *has* members.  Neither compliance with corporate formalities nor the existence of a formal membership structure is required.[17]  Instead, the Court inquires whether an individual possesses certain "indicia of membership," such as (1) participating in the organization's elections,

---

[10] *Thorson v. Epps*, 701 F.3d 444, 445 (5th Cir. 2012).
[11] *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).
[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).
[13] U.S. Const. art. III, § 2.
[14] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).
[15] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).
[16] Plaintiffs bear the burden of proof on each element.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148–49 (2013).
[17] *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675 (E.D. La. 2010).

(2) financing the organization's activities, (3) associating with the organization voluntarily, and (4) providing sworn testimony of membership.[18]  This is a holistic test. The purpose is to determine whether an organization provides the means by which members "express their collective views and protect their collective interests."[19]

Taylor argues that for purposes of associational standing, neither LEAN nor Waterkeepers has members.[20]  With respect to the former, Taylor argues LEAN relies "solely on the affidavit and testimony of Scott Porter."[21]  According to Taylor, this evidence does not provide sufficient indicia of membership.  The Court disagrees.

As a preliminary matter, LEAN does not rely *solely* on Porter to establish associational standing.  Orr attested he is a member of LEAN.  Furthermore, viewing Porter's affidavit and deposition testimony in the light most favorable to Plaintiffs, the Court finds there is a genuine issue of material fact regarding whether Orr is a member of LEAN.

Taylor also argues Waterkeepers does not have any members it can represent in federal court, because "no witness has offered any evidence that they are an individual member of [Waterkeepers]."[22]  Once again, Taylor mischaracterizes the evidence.  Orr attested and reaffirmed in his deposition that he is a member of Waterkeepers.  This and other evidence in the record creates a genuine issue of material fact.

Having determined the issue of membership must be decided at trial, the Court now examines whether the purported members have standing to sue in their own right.

---

[18] *See Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828–29 (5th Cir. 1997); *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012).
[19] *Hunt*, 432 U.S. at 345; *Concerned Citizens*, 686 F. Supp. 2d at 675.
[20] Taylor concedes Tonsmeire is a member of Apalachicola.  R. Doc. 149-1, p. 35.  The Court makes no finding on this issue.
[21] R. Doc. 149-1, p. 33.
[22] *Id.* at p. 36.

4

Article III standing has three elements: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision."[23]  Each of these elements must be supported "with the manner and degree of evidence required at the successive stages of litigation."[24]  To defeat a motion for summary judgment, Plaintiffs must present "affidavit[s] or other evidence," which establish a genuine issue of material fact.[25]

    1. *Injury-in-Fact*

An injury sufficient to confer Article III standing must be "(a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical."[26] Environmental plaintiffs can establish standing by demonstrating "they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity.'"[27]  The Fifth Circuit has characterized injury-in-fact as a "low threshold requirement," because even "an identifiable trifle will suffice."[28]

    A. *Scott Porter*

Porter attested he is an investigative biologist.  In May 2010, Porter and his colleagues discovered an invasive Asian coral species called *Tubastrea micranthus* while scuba diving in the Gulf of Mexico.  As part of his work, Porter must locate the eastern edge of the coral, which he believes is located near the Taylor well.  Porter will not dive

---

[23] *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).
[24] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).
[25] *See id.*
[26] *Id.* (internal quotation marks and citation omitted).
[27] *Laidlaw*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).
[28] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 557 (5th Cir. 1996) (quoting *Save Our Cmty. v. U.S. E.P.A.*, 971 F.3d 1155, 1161 (5th Cir. 1992)).

near the well, however, for fear of exposure to toxic chemicals. The Court has already ruled this fear, if proven, constitutes an injury in fact.[29]

Taylor contends the fear is not credible for several reasons. First, Taylor argues Porter repeatedly dove in other areas of the Gulf of Mexico even though he knew those areas were polluted. As a preliminary matter, that Porter dove at contaminated sites other than MC-20 does not conclusively disprove his fear of exposure at MC-20. Furthermore, there is a factual dispute regarding the concentration of oil at MC-20 versus concentrations at the areas in which Porter continued to dive. If concentrations at the latter areas were comparatively minor, continued diving at those areas is not necessarily inconsistent with a fear of exposure at MC-20.

Second, Taylor argues Porter testified he has already found the eastern edge of *Tubastrea micranthus*. Therefore, according to Taylor, Porter does not need to dive near MC-20. The Court has reviewed the deposition testimony and disagrees with Taylor's characterization. There is a genuine issue of material fact as to whether Porter has found the eastern edge of *Tubastrea micranthus*, and, if so, where that edge is located.

Third, Taylor argues "Porter's 'need' to dive at MC-20 cannot be the basis for injury [because] (1) coral cannot live deeper than 400 feet, and (2) there is no structure at 400 feet."[30] Even if this were true,[31] a reasonable juror could conclude that Porter is concerned about diving in the *area* affected by the spill, not just at the MC-20 site itself.

---

[29] *See Apalachicola Riverkeeper v. Taylor Energy Co., LLC*, No. 12-337, 2013 WL 1897142, at *4 (E.D. La. May 4, 2013); *see also Sierra Club*, 73 F.3d at 556 ("The Supreme Court has expressly held that a 'threatened injury' will satisfy the 'injury in fact' requirement for standing.") (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 724 (1982)).
[30] R. Doc. 149-1, p. 21.
[31] The Court makes no finding on this issue.

B. *Paul Orr*

Orr attested he uses the Gulf of Mexico for recreational and educational purposes. Specifically, he leads boat tours in and around an area approximately eleven miles away from MC-20. Orr leads these tours in a small motorboat. Water frequently splashes on him and his passengers. Orr would like to continue his boating trips but is reluctant to do so for fear of exposure to contaminated water. Orr also attested he enjoys flying small aircraft over the Gulf of Mexico. During a trip in April 2012, Orr observed the oil slick emanating from MC-20, which he described as "a scourge on the beautiful sea." Accepting his attestations as true, the Court previously found that Orr suffered a cognizable injury, because his aesthetic and recreational interests have been compromised.[32]

Similar to its argument with respect to Porter, Taylor argues Orr's deposition testimony establishes that "the allegations and concerns expressed in Orr's declaration are not true, [and] are contradicted by . . . undisputed facts."[33] Specifically, Taylor contends that Orr has never taken boat tours—either with passengers or by himself—to the area around MC-20 and that he has no plans to do so in the future. Taylor also contends Porter's fear of injury is not reasonable, because he has no personal knowledge of whether and to what extent the water is actually polluted. Having reviewed the summary judgment record in the light most favorable to Plaintiffs, the Court finds there are genuine disputes of material fact with respect to both of these contentions.

---

[32] *See Apalachicola*, 2013 WL 1897142, at *4; *see also Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009) ("While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice.").
[33] R. Doc. 149-1, p. 23.

Taylor also challenges the alleged injury to Porter's aesthetic interests. Taylor contends those interests have not been injured, because Porter's aerial trips over the Gulf of Mexico are only conducted as part of his job to search for oil sheens. In other words, Taylor argues that a plaintiff cannot sustain an injury-in-fact to his aesthetic interests if those interests are adversely affected during the course and scope of his employment. In support of this bold argument, Taylor cites only one case—an unpublished "summary order" from the Second Circuit.[34] Even if that case were binding in the Fifth Circuit,[35] it is factually distinguishable, because the evidence does not conclusively establish Porter flew his aircraft solely "to obtain evidence to support this lawsuit."[36]

### C. *Arthur Tonsmeire*

According to his affidavit, Tonsmeire is an avid fisherman. His preferred target is Cobia. Tonsmeire is concerned that if the Taylor well continues to leak, the Cobia in the Gulf of Mexico will die, and he will no longer be able to fish for them.[37] The Court previously determined Tonsmeire's concerns, if proven, were sufficient to constitute an injury-in-fact.[38]

Taylor contends this fear is not credible, because Tonsmeire does not fish anywhere near MC-20 and has no personal knowledge of any negative impacts to Cobia. Plaintiffs have identified evidence in the record sufficient to create a factual dispute on both of these points. Taylor also contends Tonsmeire's fear is not reasonable, because

---

[34] *See generally Mancuso v. Consol. Edison Co. of N.Y., Inc.*, 25 F. App'x 12 (2d Cir. 2013).
[35] As an unpublished case, *Mancuso* is not even binding precedent in the Second Circuit.
[36] *Id.* at 13.
[37] Tonsmeire's affidavit also includes other allegations of injury, but the Court need not consider them today.
[38] *See Apalachicola*, 2013 WL 1897142, at *4; *Cf. Lujan*, 504 U.S. at 562–63 ("Of course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing.")

8

"Tonsmeire has not curtailed fishing or other activities; he fishes as much now as he ever has."[39] That Tonsmeire continues to fish in the Gulf of Mexico is a separate issue from whether his fears regarding the disappearance of Cobia are legitimate.

### 2. *Causation*

In order to establish the requisite causal connection between injury and misconduct, the plaintiff need not show that the defendant's actions "are the very last step in the chain of causation,"[40] or that the defendant's actions are a proximate cause of his injury.[41] Rather, the plaintiff need only establish his injury is "fairly traceable" to the defendant's actions.[42] As the Fifth Circuit has recognized, "the 'fairly traceable' element does not require that the plaintiffs show to a scientific certainty that defendant's effluent, and defendant's effluent alone, caused the precise harm suffered by the plaintiffs."[43]

---

[39] R. Doc. 149-1, p. 27.
[40] *Bennet v. Spear*, 520 U.S. 154, 168–69 (1997).
[41] *Lexmark Int'l, Inc. v. Static Control Invs.*, 132 S. Ct. 1377, 1391 n.6 (2014).
[42] *Clapper*, 133 S. Ct. at 1147; *Steel Co.*, 523 U.S. at 103 (noting that causation requires a "*fairly traceable* connection between the plaintiff's injury and the complained-of conduct of the defendant.") (emphasis added). Plaintiffs contend the relevant test for causation in a citizen suit under the CWA is set forth in *Cedar Point*. *See* R. Doc. 173-8, p. 20. In that case, the Fifth Circuit applied the following three-factor test articulated by the Third Circuit: "the plaintiff must show[] that a defendant has (1) discharged some pollutant in concentrations greater than allowed by its permit (2) into a waterway in which the plaintiffs have an interest that is or may be adversely affected by the pollutant and that (3) the pollutant causes or contributes to the kinds of injuries alleged by the plaintiffs." *Cedar Point*, 73 F.3d at 557 (internal quotation marks omitted). The Fifth Circuit cautioned against an "overly broad application" of this test. *Id.* The court explained that "some 'waterways' covered by the CWA may be so large that plaintiffs should rightfully demonstrate a more specific geographic or other causative nexus in order to satisfy the 'fairly traceable' element of standing." *Id.* at 558 n.24. For this reason, the court recognized the Third Circuit's test "may not be an appropriate standard in other CWA cases." *Id.*; *see also Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361 (5th Cir. 1996) (refusing to apply Third Circuit test where waterway was "too large"). Because the affected waterway in this case—the Gulf of Mexico—is significantly larger than the waterway in *Cedar Point*, the Court finds the Third Circuit's test is inappropriate in this case. Accordingly, the Court will apply the traditional "fairly traceable" test. To the extent this holding is inconsistent with the Court's prior opinion on standing, that opinion is modified accordingly. *See* Fed. R. Civ. P. 54(b).
[43] *Save Our Cmty.*, 971 F.2d at 1161. Taylor acknowledges this is the proper standard. *See* R. Doc. 149-1, p. 29.

### A. *Scott Porter*

Taylor argues Porter's GAP affidavit establishes "that all of [his] hypersensitivities and fears regarding oil exposure are solely the result of the BP spill."[44] The Court disagrees for two reasons. First, when read in the light most favorable to Plaintiffs, the GAP affidavit does not conclusively establish the BP spill as the sole cause of Porter's fears. Second, even if Taylor's reading was correct, the affidavit *still* would not be enough to prevail on summary judgment. The GAP affidavit was submitted for the purpose of quantifying losses caused by BP. Thus, the omission of any reference to Taylor or the Taylor spill is hardly surprising.

### B. *Paul Orr*

In arguing that Orr's injuries are not fairly traceable to Taylor's conduct, Taylor essentially rehashes its arguments with respect to injury in fact. There is a genuine dispute of material fact regarding whether Orr's injuries are fairly traceable to the Taylor spill.

### C. *Arthur Tonsmeire*

Similar to its argument with respect to Porter, Taylor argues Tonsmeire conceded in his deposition that *all* of his injuries were caused by the BP spill. Having reviewed that deposition in the light most favorable to Plaintiffs, the Court disagrees. There is a genuine dispute of material fact regarding the cause(s) of Tonsmeire's injuries.

### 3. *Redressability*

The final hurdle to individual standing is redressability. In order to pass this hurdle, the plaintiff must establish "a likelihood that the requested relief will redress the

---

[44] R. Doc. 149-1, p. 30.

alleged injury."[45] A plaintiff must demonstrate redressability for each form of relief sought.[46] Plaintiffs in this case seek injunctive relief and civil penalties. Both are available remedies under the applicable statutes.[47]

A. *Injunctive Relief*

As this Court previously recognized, "under RCRA and the CWA, '[a]n injunction is an appropriate remedy because it will abate or deter future illegal conduct.'"[48] Taylor nonetheless contends an injunction will not redress Plaintiffs' injuries for three reasons. First, Taylor argues there could be no "efficacy" for any order of injunctive relief, because Taylor no longer operates as an oil producer and exists solely to address the MC-20 site.[49] The Court is unclear as to what relevance, if any, Taylor's operating status has on the potential for injunctive relief to redress Plaintiffs' injuries.[50]

Second, Taylor argues there is "unanimity from all federal regulators" that Taylor has done all it can do to stop the oil leak and that no further remedial action is recommended.[51] Plaintiffs recently submitted a joint report from the Bureau of Safety and Environmental Enforcement and the Bureau of Ocean Energy Management, and a

---

[45] *Steel Co.*, 523 U.S. at 103.
[46] *See Laidlaw*, 528 U.S. at 185.
[47] *See Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 526 (5th Cir. 2008) ("Under the CWA citizen-suit provision, federal courts are authorized to enter injunctions and assess civil penalties . . . ."); *Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 601 (6th Cir. 2004) ("[T[he relief available under § 6972 of the RCRA is virtually identical to that available under the CWA, i.e., injunctive relief, civil penalties, and attorney fees.").
[48] *See Apalachicola*, 2013 WL 1897142, at *8 (alteration in original) (quoting *Murphy Oil*, 686 F. Supp. 2d at 673).
[49] *See* R. Doc. 149-1, p. 11.
[50] Taylor has taken inconsistent positions in this litigation regarding the importance of its operating status. For purposes of challenging standing, Taylor argues that it no longer exists as a viable business and that its sole purpose is to address the spill. In the same breath, Taylor insists on designating large portions of discovery as "confidential" in order to protect its trade secrets and proprietary technology. If Taylor has ceased to operate as an oil producer, the Court questions whether information related to oil production should remain confidential.
[51] *Id.*

11

report from the United States Coast Guard.[52] These reports and other evidence in the record create a genuine factual dispute regarding whether Taylor can—and should—do more to mitigate the impacts of the spill at MC-20. If Plaintiffs can establish at trial that Taylor continues to violate the CWA or RCRA, an injunction requiring Taylor to cease those violations may redress Plaintiffs' injuries.[53]

Taylor's third argument piggybacks on the second: because Taylor is fully in compliance with all regulatory orders, any court order requiring further remedial measures would cause Taylor "to violate current instructions of the Federal Government."[54] As previously discussed, it is far from clear that Taylor has complied with all government orders. But even if it was in compliance, Taylor cites no authority for the proposition that a court may not order injunctive relief potentially inconsistent with the orders of a federal agency.[55]

### B. *Civil Penalties*

A plaintiff has standing to seek civil penalties "[t]o the extent that they encourage defendants to discontinue current violations and deter them from committing future

---

[52] *See* R. Doc. 257-2. Taylor argues these reports are inadmissible hearsay and therefore do not constitute competent summary judgment evidence. *See generally* R. Doc. 259. The reports were printed directly from government websites. Courts around the country have held that printouts from government websites satisfy Rule 803(8)—the public records exception to the hearsay rule. *See, e.g.*, *E.E.O.C. v. E.I. Du Pont De Nemours & Co.*, No. Civ. A. 03-1605, 2004 WL 2347559, at *1 (E.D. La. Oct. 18, 2004) (collecting cases); *Williams v. Long*, 585 F. Supp. 2d 679, 690–91 (D. Md. 2008) (same); *Estate of Gonzalez v. Hickman*, No. ED CV 05-660 MMM (RCx), 2007 WL 3237727, at *2 n.3 (C.D. Cal May 30, 2007). Furthermore, "[f]ederal courts consider records from government websites to be self-authenticating under Rule 902(5)." *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670 SBA, 2008 WL 4183981, at *7 (N.D. Cal. Sept. 9, 2008). The reports are competent summary judgment evidence.
[53] *See Texans United For a Safe Economy Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 794 (5th Cir. 2000) ("Assuming arguendo that [the plaintiffs] can prove at trial that they have suffered injuries, an injunction requiring [the defendant] to cease its violations will—at least in part—redress these injuries.").
[54] R. Doc. 149-1, p. 12.
[55] One Fifth Circuit case suggests a citizens suit may be premised on the fact that government action "does not go far enough to ensure that [the defendant] will not violate federal . . . standards in the future." *See Texans United*, 207 F.3d at 794.

ones."[56]  Taylor contends civil penalties would have *de minimis* deterrent value in this case for several reasons.  First, Taylor argues it "has no economic incentive to violate the Clean Water Act."[57]  But whether Taylor's has economic incentive to violate the CWA is a separate question from whether civil penalties would *disincentivize* current or future violations.

Second, Taylor argues it has already expended significant financial resources to decommission MC-20 and eliminate the sheen.  Some of these funds, Taylor notes, are subject to a trust agreement with federal regulators.  That Taylor has already spent a large amount of money attempting to clean up the spill does not necessarily mean civil penalties would have no deterrent value.  Again, this is an issue that must be decided by the trier of fact.

Third, Taylor argues civil penalties would be futile, because federal authorities recommend no further remedial action.  As explained above, the record is not clear on this point.

Fourth, Taylor argues civil penalties will not redress Porter's injuries, because the injuries are already being redressed in the form of a $700,000 settlement with BP.[58]  As a preliminary matter, this argument erroneously presupposes the injuries caused by BP are co-extensive with the injuries caused by Taylor.  This is a factual determination that must be made at trial.  Furthermore, Taylor's argument fails to acknowledge that civil penalties redress injuries not by providing tort compensation but by encouraging polluters to change their behavior.[59]  It is difficult to imagine how an award of compensatory damages from BP would encourage *Taylor* to change its behavior.

---

[56] *Laidlaw*, 528 U.S. at 186.
[57] R. Doc. 149-1, p. 12.
[58] *Id.* at p. 14.
[59] *See Laidlaw*, 528 U.S. at 186.

Finally, imposing civil penalties in this case would not result in a double recovery to Porter, because civil penalties under the CWA and RCRA are only payable to the United States.[60]

## II. Whether The Interests At Stake Are Germane to Plaintiffs' Organizational Purposes

Having determined there is a factual dispute regarding whether Plaintiffs' members have standing to sue in their own right, the Court must now determine whether the interests Plaintiffs seek to protect are germane to their organizational purpose. "[T]he germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose."[61] For purposes of defeating summary judgment, there is sufficient evidence in the record to establish that the interests at stake in this lawsuit are germane to the organizational purpose of each Plaintiff.

## CONCLUSION

For the reasons previously stated, the motion for summary judgment is denied. The Court emphasizes the narrowness of its holding. The Court does not rule that each Plaintiff has associational standing. Rather, the Court finds there are genuine issues of material fact that preclude summary judgment. Plaintiffs will have the burden of proving standing at trial.

---

[60] *See Laidlaw*, 528 U.S. at 173 (noting civil penalties under CWA are "payable to the United States Treasury); 42 U.S.C. § 6928(g) ("Any person who violates [the RCRA] shall be liable *to the United States* for a civil penalty . . . .") (emphasis added); *cf. Ailor*, 368 F.3d at 601 ("The RCRA, like the CWA, does not provide for compensatory damages.").

[61] *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 n.2 (5th Cir. 2010) (quoting *Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 148 (2nd Cir. 2006)).

New Orleans, Louisiana, this 7th day of July, 2015.

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**