UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| APALACHICOLA RIVERKEEPER ET AL. | CIVIL ACTION |
| VERSUS | NO:     12-0337 |
| TAYLOR ENERGY COMPANY, LLC | SECTION: "E" (4) |

### ORDER

Before the Court is a **Third Motion Challenging Confidentiality (R. Doc. 180)**, filed by the Plaintiffs, Apalachicola Riverkeeper, Louisiana Environment Action Network, and Waterkeeper Alliance (collectively "Plaintiffs"). Plaintiffs' Motion seeks to lift confidentiality designations made by the Defendant, Taylor Energy Company, LLC ("Taylor"). The Motion is opposed. *See* R. Doc. 205. The Motion was heard by oral argument on Wednesday, May 20, 2015.

### I.     Background

This is a citizen enforcement suit brought by the Plaintiffs pursuant to the Clean Water Act ("CWA") and the Resource Conservation Recovery Act ("RCRA"). *See* R. Doc. 29, p. 1. Plaintiffs allege that during Hurricane Ivan in 2004, an underwater mudslide in the Gulf of Mexico toppled Taylor's Mississippi Canyon 20 ("MC 20") platform and damaged an undetermined number of wells owned by Taylor, which caused the wells to begin to discharge oil. *Id.* at 2. In 2008, the U.S. Coast Guard established a Unified Command[1] to direct response efforts for the ongoing oil release. In addition to the U.S. Coast Guard, the Unified Command

---

[1] According to the U.S. Coast Guard's Incident Handbook, a Unified Command is comprised of agencies, organizations or private industries that can bring a large amount of tactical and support resources to the table. A Unified Command is formed when an incident impacts the jurisdictional or functional responsibility of more than one agency. The Unified Command allows the agencies to make consensus decisions regarding the incident, while carrying out their own agencies' jurisdictional responsibilities. *See* U.S. Coast Guard Incident Management Handbook, ch. 5 (Aug. 2006), available at http://www.uscg.mil/hq/nsfweb/docs/FinalIMH18AUG2006.pdf.

includes the Bureau of Safety and Environmental Enforcement ("BSEE") and the Bureau of Ocean Energy Management ("BOEM").

The Plaintiffs filed their original Complaint on February 2, 2012, alleging that Taylor has (i) violated the CWA for discharge of oil without a permit; (ii) violated the CWA for discharge of oil in violation of a permit; and (iii) violated the RCRA. *See* R. Doc. 1; *see also* R. Doc. 29, pp. 13-15. Plaintiffs also requested declaratory and injunctive relief, as well as an award of monetary damages made payable to the U.S. Treasury. R. Doc. 29, p. 15. The Plaintiffs filed a First Amended Complaint (R. Doc. 8) on March 3, 2012, and a Second Amended Complaint (R. Doc. 29) on June 8, 2012.

In the Second Amended Complaint, Plaintiffs allege that their members use and enjoy waters of the Gulf of Mexico, but Taylor's discharge into the waters cause and contribute to the impairment of their members' use and enjoyment of those waters. R. Doc. 29, p. 6. They allege that their members' injuries are fairly traceable to Taylor's failure to stop the discharge of oil from its well(s). *Id.* at 7. Attached to the Second Amended Complaint were affidavits from members of the Louisiana Environmental Action Network (R. Docs. 29-1, 29-2 and 29-5); the Lower Mississippi Riverkeeper (R. Doc. 29-2); the Waterkeeper Alliance (R. Docs. 29-2 and 29-6); and the Apalachiocola Riverkeeper (R. Docs. 29-3 and 29-4). On June 26, 2012, Taylor filed a Motion to Dismiss the Second Amended Complaint arguing that the Plaintiffs lacked standing. *See* R. Doc. 37. On July 21, 2013, the presiding District Judge granted the motion in part and denied the motion in part. *See* R. Doc. 81. Taylors motion was granted as to the dismissal of the Plaintiffs' claim that Taylor violated the CWA for discharge of oil in violation of a permit. *Id.* at 11. The District Judge found that Taylor did not hold a valid permit for the oil discharge at issue in this action. *Id.* As to the remaining claims, the District Judge denied

Taylor's motion to dismiss. *Id.* at 17. Accordingly, the remaining claims in this action allege that Taylor has (i) violated the CWA for discharge of oil without a permit and (ii) violated the RCRA.

As to the instant Motion, the Plaintiffs have moved this Court to lift Taylor's confidentiality designations for twenty-two (22) documents produced during discovery. *See* R. Doc. 180. Plaintiffs represent that Taylor has made the confidentiality designations pursuant to the consent Protective Order (R. Doc. 95) entered into on January 6, 2014, which defines confidential as information "relating to trade secrets and other confidential research, development, marketing, pricing, financial and commercial information, as well as information subject to confidentiality agreements between third parties." *See* R. Doc. 95. Plaintiffs contend that Taylor has designated many documents confidential that do not qualify for that designation under the Protective Order and that the broad designations exceed the bounds intended by Federal Rule of Civil Procedure ("Rule") 26(c).

**II.    Standard of Review**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, it is well

established that the scope of discovery is within the sound discretion of the trial court. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300 (5th Cir. 1973).

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Federal Rule of Civil Procedure 26(c) governs the issuance of protective orders. It provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending-or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c)(1). Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998); *see also Baggs v. Highland Towing, L.L.C.*, No. 99-1318, 1999 U.S. Dist. LEXIS 11450, at *6-7, 1999 WL 539459, at *2 (E.D. La. July 22, 1999) (finding that Rule 26(c)(2) orders may be issued only when the moving party makes "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements").

**III.   Analysis**

The Plaintiffs argue that Taylor's response to the 10 year ongoing oil spill cries out for the "virtues of sunlight as a disinfectant." *See* R. Doc. 180-1, p. 1 (citing *Ashcroft v. Lousiana Coca-Cola Co.*, No. 86-80, 1986 WL 14781, at *1 (E.D. La. Dec. 19, 1986)). Plaintiffs contend that despite Taylor's attempt to keep the oil spill a secret, there is no legitimate basis in law or the Protective Order for Taylor's claim of confidentiality. *Id.* at 2.

4

Plaintiffs aver that Taylor has the burden of proving that its confidentiality designations are proper under the Protective Order and must show good cause for each document designated confidential. *Id.* at 5. Plaintiffs argue that Taylor has been too liberal with its confidentiality stamp and given Taylor's over-designations, the Court should lift confidentiality for the challenged documents unless Taylor shows good cause. *Id.* at 6.

Plaintiffs further argue that Taylor's abuse of the Protective Order prejudice its membership because it restricts who may see the material. *Id.* at 20. Plaintiffs argue that they have a legitimate interest in communicating effectively with its members and supporters about the issues in this lawsuit. *Id.* The Plaintiffs argue the public interest weighs against confidentiality and that the CWA sets forth a national policy of transparency and "public participation." *Id.*

Additionally, Plaintiffs aver that Taylor is pushing for a "final resolution" of the ongoing spill without any opportunity for input from the public or outside experts. *Id.* at 2. Plaintiffs argue that Taylor's response is in direct contradiction from the BP oil spill, which ensured that the citizens of the gulf region had access to all relevant public and environmental health information related to the spill. *Id.* Furthermore, Plaintiffs assert that Taylor's secret response is based on underestimates of oil volumes based on an outdated and inaccurate table for converting visual observations of oil to estimate quantities. *Id.* at 3.

In opposition, Taylor argues that the ability of the public to view its confidential research and reports, and to scrutinize and challenge the deliberative process of the United States has no bearing on whether the Plaintiffs can establish the elements of its claims under the CWA and the RCRA. *See* R. Doc. 205, at 1. Taylor contends that the Freedom of Information Act ("FOIA") is the statute that governs the public's right to know governmental activity and if the Plaintiffs are

unhappy with the public's right to participate in Unified Command's response directive at MC 20, they should file suit against the U.S. Coast Guard and the U.S. Department of Interior. *Id.* at 1-2.

Taylor represents that it made good faith confidentiality designations for its scientific research, studies, expert reports and documents related to the ongoing response. Taylor asserts that its confidentiality designations were based on its agreement with the U.S. Coast Guard and U.S. Department of Interior to keep all documents out of the public domain pending final resolution. *Id.* Taylor also contends that the documents at issue are the scientific research and other proprietary commercial information of Taylor's professional consultants that necessitated the filing of the Protective Order.

Taylor argues that it has met its burden of establishing a good faith basis and good cause for designating the documents confidential and that the burden now shifts to the Plaintiffs. *Id.* at 3. Taylor contends that it has good cause because (1) the federal government has maintained that the documents are not subject to public release in the ongoing investigation; (2) the documents contain confidential research, proprietary trade secrets, and commercial information; and (3) Taylor's research and analyses are subject to confidentiality agreements with third parties. *Id.* at 8.

After considering the parties' submissions and arguments during oral argument, the Court has narrowed down the issues to three main disputes: (1) whether the federal government's protection of the documents under FOIA and agreement to maintain the documents confidential are good cause; (2) whether Taylor's third party agreements are good cause; and (3) whether each document is confidential under Rule 26(c).

A.  **The Federal Government's Protection of the Documents under FOIA and its Agreement to Protect the Documents as Confidential**

Taylor contends that the federal government has demonstrated its intent to maintain the documents as confidential by (1) denying the Plaintiffs' FOIA requests, and (2) agreeing that all communications and documents submitted by Taylor remain confidential. Taylor additionally avers that the Plaintiffs are attempting to circumvent the D.C. District Court's decision to uphold the government's FOIA denials. Having considered each of these arguments, the Court concludes that these arguments do not demonstrate good cause.

First, Taylor presented a similar FOIA argument in its Opposition (R. Doc. 136) to the Plaintiffs' Second Motion Challenging Confidentiality (R. Doc. 131). In granting the Plaintiffs' motion, the Court opined that *Taylor Energy Co., LLC v. U.S. Dep't of the Interior*, 734 F. Supp. 2d 112, 115-18 (D.D.C. 2010) and *Waterkeeper Alliance v. United States Coast Guard*, No. 13-289, 2014 WL 5351410 (D.D.C. Sept. 29, 2014) are not binding on this Court's confidentiality analysis. *See* R. Doc. 179, p. 8. The Court concluded, and affirms once again, that the D.C. District Court opinions are "factually inapplicable because they pertain to FOIA requests made by the Waterkeepers to government agencies, and are not based on discovery between two parties. Therefore, contrary to Taylor's assertion, the cases do not control the Court's analysis." *Id*.

Second, Taylor has not provided any documentation of an agreement demonstrating that the U.S. Coast Guard and U.S. Department of Interior agreed to maintain the subject documents as confidential. Taylor directed the Court's attention to the affidavit of its CEO William Pecue as evidence of the agreement. However, the affidavit is not direct evidence of the agreement but a self-serving affidavit. Taylor also pointed to Exhibit A of the subject Motion to lend support for its contention that an agreement exists. Exhibit A is an email between Pecue and representatives of the U.S. Coast Guard and U.S. Department of Interior. The email, however, only demonstrates that the U.S. Coast Guard and U.S. Department of Interior agreed to maintain the Incident Action Plan

7

("IAP")[2] as confidential. The email does not demonstrate the existence of an agreement to protect all documents and communications. Despite Pecue's email requesting that any documents, including the IAP, submitted to Unified Command be treated as confidential, the federal government never agreed to the request and only agreed to protect the IAP.  Moreover, the Plaintiffs have not challenged the confidentiality of the IAP, so the email lends no support for the confidentiality of the documents at issue.

### B.     Taylor's Third Party Agreements

Taylor asserts that good cause exists because it has entered into confidentiality agreements with the following third parties: Fugro McClelland Marin Geoscience; Boots and Coots; Platt, Sparks & Associates Consulting Petroleum Engineers; Stuart Wright Pte; Environmental Researching Consulting; Waldmar Nelson and Company; and Navistry Corporation. In support of its opposition, Taylor attached six affidavits allegedly supporting the existence of the third party confidentiality agreements. Taylor subsequently attached four confidentiality agreements[3] to its response to the Court's May 1, 2015, Order (R. Doc. 245).

Taylor contends that the third party agreements protect the confidentiality of the documents created by the third parties on behalf of Taylor. Taylor argues that it agreed to produce the documents created by third parties in reliance on the Protective Order, which states that "confidentiality agreements with third parties are deemed confidential."

The Court notes that it retains the authority to modify or lift confidentiality orders that it previously entered, which includes the Protective Order at issue. *Holland v. Summit Autonomous,*

---

[2] The email only references an IAP and does not address what IAP means. However, the Plaintiffs assert that an IAP is an Incident Action Plan. *See* R. Doc. 252-2, p. 5.

[3] Taylor provided three Master Service Agreements and one Engineering Service Agreement, each incorporated a confidentiality provision. The agreements provided were for Fugro McClelland Marin Geoscience, Boots and Coots, Platt, Sparks & Associates Consulting Petroleum Engineers, and Navistry Corporation.  *See* R. Docs. 250-1, 250-2, 250-3, and 250-4.

*Inc.*, No. CIV. A. 00-2313, 2001 WL 930879, at *2 (E.D. La. Aug. 14, 2001) (citing *Pansy v. Borough of Stroudsbourg*, 23 F.3d 772, 784 (3d Cir. 1994)). Here, the Protective Order is a blanket protective order "that permits the parties to protect documents that they in good faith believe contain trade secrets or other confidential commercial information." *Id*.

As the Court noted in its May 1, 2015, Order, the Protective Order in its current form contains the unwieldy provision that information subject to confidentiality agreements with third parties are deemed confidential. *See* R. Doc. 245. The Court noted, "[w]hile the Court signed the Protective Order with the provision in an attempt to facilitate the parties' agreement, the provision is unenforceable and binds the Court to the purported agreements of third parties for whom the Court does not have jurisdiction." *Id*.

Moreover, confidentiality designations under the Protective Order are governed by Rule 26(c). *See* R. Doc. 95, p. 1. The second introductory paragraph of the Protective Order states:

> *[P]ursuant to Ru1e 26(c)* of the Federal Rules of Civil Procedure, documents and information produced or exhibited by and among the parties to this action relating to trade secrets and other confidential research, development, marketing, pricing, financial information or commercial information, as well as information subject to confidentiality agreements with third parties are deemed confidential.

*Id*. (emphasis added). Therefore, based on the explicit language of the Protective Order, every category that may be deemed confidential is subjected to the confines and limitations of Rule 26(c). As a result, the sole existence of a third party's agreement cannot independently render a document confidential unless it comports with Rule 26(c).

Based on the foregoing, the Court concludes that the third party agreements are not good cause for the confidentiality designations. All documents that Taylor purports are protected due to third party confidentiality agreements will not be deemed confidential unless they contain confidential information pursuant to Rule 26(c). As such, the Court shall address the merits of the confidentiality designations for each document under Rule 26(c).

C. **Confidentiality under Rule 26(c)**

Taylor contends that the documents at issue contain confidential research, proprietary trade secrets, and commercial information because they related to an innovative process it utilized clean up after the destruction of MC 20. Taylor asserts that its innovative process is a marketable asset and its only remaining asset. R. Doc. 205, p. 10. Taylor contends that all of its investment in developing the process would be loss if the scientific studies, reports, and data that underlie the innovative approach is publicly disclosed. *Id.*

In response, Plaintiffs aver that Taylor's broad allegations of harm are insufficient and that Taylor must make a particular, specific demonstration of its need for protection from a significant harm. *See* R. Doc. 180-1, p. 6. Plaintiffs contend that Taylor fails to describe with any specificity which process, innovation, or technology has commercial value and which documents contain that information. *Id.* at 7. Plaintiffs further contend that Taylor fails to explain the need for confidentiality to protect a process which is already patented and which is not set forth in engineering detail in any of the produced documents. *Id.*

The Court recognizes that the Federal Rules of Civil Procedure do not expressly define the terms "trade secret" or "confidential commercial information" as used in Rule 26(c). Nonetheless, some district courts have defined these terms as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." *In re S3 Ltd.*, 242 B.R. 872, 876 (Bankr. E.D. Va. 1999); (quoting *Diamond State Ins. Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 697 (D. Nev. 1994)); *see also Campo v. Am. Corrective Counseling Servs., Inc.*, No. C 01-21151 JW (PVT), 2008 WL 2811968, at *2 (N.D. Cal. July 21, 2008) (finding that a party seeking protection "will have to show that

disclosure of a particular document would cause significant harm to its competitive and financial position").

Before and during oral argument, the Court assessed each of the twenty-two (22) documents at issue and considered whether the documents contain information that could cause substantial economic harm to Taylor's competitive position if they were disclosed. After reviewing the documents, the Court concludes that only a portion of one document contains confidential information and every other document is not confidential for the reasons assigned.

### 1. Exhibit A: Email String Between BSEE, Coast Guard, and Taylor

Exhibit A is an email string that includes a conversation between the BSEE, the U.S. Coast Guard, and Taylor regarding the confidentiality of the IAP. Taylor claimed that the document is not relevant to a claim or defense, and will be irrelevant for trial. R. Doc. 205, p. 17. Plaintiffs asserted, in opposition, that the email has no commercial value and disclosure would not cause economic harm.

Upon reviewing the email, the Court agrees with the Plaintiffs and finds that the disclosure of the email will not impede Taylor's economic interest, and it is not confidential under Rule 26(c). Furthermore, if Taylor contends that the email is not relevant to a claim or defense, it should have not produced the document for lack of relevancy rather than make a post-production confidentiality designation. Accordingly, Exhibit A is not confidential.

### 2. Exhibit B: Email from Taylor to Coast Guard

Exhibit B is an email from Taylor's CEO, Pecue, to the U.S. Coast Guard discussing Pecue's conversation with Stress Engineering about "potential accelerated corrosion exposure as a result of aluminum (new dome) and steel (old dome) contact below the mudline." Pecue

explained Stress Engineering's concerns and explained that they may need to modify the design of the aluminum construction of the existing dome design.

Taylor argued that the second page of Exhibit B contains an explanation by Pecue—a petroleum engineer—regarding the design of the containment dome, which is an innovative design. Taylor averred that Pecue was discussing confidential research that another company could use if faced with a similar incident. In response, the Plaintiffs argued that the discussions of the dome design are not technical or sufficiently detailed to enable reverse-engineering. R. Doc. 180-1, at 16.

The Court concludes, based on its review of the document, that two paragraphs may be redacted to protect information pertaining to the two alternative designs. These two paragraphs are the fourth and fifth full paragraphs on the second page of Exhibit B. While Pecue does not give specific specifications for the dome design in these paragraphs, Pecue provided some design detail and discussed how the design may reduce or eliminate the leak. Thus, the Court finds that these two paragraphs may maintain confidentiality, but the remainder of Exhibit B is not confidential.

### 3. Exhibit C: Log of Response Events Between 2004 and 2014

Exhibit C is a log of events containing sixty-six (66) entries referencing findings at the site, actions taken by Taylor, when certain response tasks/projects began, and when well operations were complete. The Plaintiffs argued, and the Court agrees, that the document is merely a summary of events concerning MC 20. *See* R. Doc. 180-1, at 16. Exhibit C is a factual and chronological account of the events at MC 20 and disclosure will not cause any economic or competitive harm. Thus, Exhibit C is not confidential.

### 4. Exhibits D, E, F, G and H: Scientific and Technical Reports[4]

Exhibits D, E, F, G and H contain scientific research about well plugging options, seafloor and geologic conditions, the cause of the seafloor failure at MC 20, and slope stability. Taylor maintained that these exhibits contain "scientific research," which is a protected under the Protective Order.

First, the Court notes that the Protective Order does not explicitly protect "scientific research" but protects "confidential research," which is pursuant to the language found in Rule 26(c). Scientific research is a broad category that would encompass information that would not result in economic or competitive harm if disclosed. Confidential research, on the other hand, is in line with protecting confidential and commercially sensitive information.

The scientific reports at issue here are not confidential reports. The reports are investigatory in nature and report facts and information about wells and the seafloor at the MC 20 site. Additionally, the information contained in the reports are specific to the conditions at MC 20 and do not provide detail about Taylor's subsequent efforts to stop the oil leak or the alleged innovative design utilized in the response efforts. As such, the Court concludes that Exhibits D, E, F, G and H are not confidential.

### 5. Exhibits I, J, K, L and M: Unified Command Reports[5]

Exhibits I, J, K, L and M are reports created by Taylor for Unified Command. Within these reports is information relating to: (1) summaries of the studies and surveys following the

---

[4] The following are the titles for Exhibits D-H: Considerations for Sediment Plugging and Risk of Re-Entering Plugged Wells; Assessment of Seafloor Movements; Summary of Seafloor Stability; Seafloor Failure Analyses; and Excavation Project: Geological and Engineering Analysis.

[5] The following are the titles for Exhibits I-M: Unified Command Report: Report of Environmental Conditions and Actions; Ecological Risk Assessment: Consensus Workshop 2013; Final Risk Assessment Cost Estimate – Unified Command Summary; Independent Risk Assessment Services – Wright Report; and Analysis of potential Response Costs and Impacts of Hypothetical Future Release.

toppling of the platform; (2) evaluations of potential ecological impacts of the available response options; (3) an overview and synopsis of all studies and technical analyses performed; (4) an independent risk assessment of the risk factors relating to the drilling of additional intervention wells; and (5) assessment of the potential costs of future oil release.

Taylor contended that the information contained in these documents include scientific research and studies conducted by third parties on behalf of Taylor. Taylor argued that some of the reports discussed the cost of the response and the potential cost of a future oil release. Taylor also stated that the information has commercial value because it encompasses Taylor's thirty (30) years of knowledge about the wells at MC 20, which could be of commercial value if the United States, the owner of the wells, re-leases the wells in the future.

After reviewing the documents and considering Taylor's arguments, the Court finds that the reports created for Unified Command are not confidential. The documents are an overview of the scientific research addressed in Exhibits D-F, which the Court has already concluded are not confidential. Furthermore, the overviews in the reports are not detailed and do not provide specific technical information about the response that could jeopardize Taylor competitively or economically.

As for Taylor's argument that it may be able to sell the information contained in the reports to a future leaseholder, the Court finds that this argument is speculative and unsupported. Taylor contends that it may be able to sell this information in the future, but it did not provide the Court with any explanation regarding the profitability of the information contained in the reports or what specific information is commercially valuable. Based on the above, the Court finds that Exhibits I, J, K, L and M are not confidential.

### 6. Exhibits N, O, P, and Q: Expert Witnesses' Reports[6]

Exhibits N, O, P, and Q are expert reports created by four experts in the fields of environmental science, engineering, geochemistry, and petroleum engineering. The experts were retained by Taylor for this litigation. The issues discussed in the reports include: (1) responding to a report provided by Dr. Ian MacDonald; (2) the environmental impact of leaving soil in place; (3) whether the MC 20 site presents an imminent danger to health and the environment; (5) whether the wells continue to discharge; (6) the source of the sheen, likelihood of it continuing and whether there is an effective remedy; and (7) the flow rates of the wells at MC 20 and the potential volume of oil that could discharge.

Taylor argued that the reports are a culmination of all the confidential research that Taylor has conducted in its response effort. *See* R. Doc. 205, p. 14. Taylor additionally argued that the reports are a summary of the testimony that each expert will give at the public trial, and that there is no basis for the reports to be made publicly available before trial. *Id.* In response, the Plaintiffs asserted that Taylor's intention to make the reports public at trial is not a valid reason to keep the reports confidential.

The Court's review of the experts' reports demonstrated that the information contained therein is not confidential. Similar to the Court's review of the Unified Command reports and the scientific and technical reports, the experts' reports are investigatory and do not contain commercially sensitive information that could cause economic harm if disclosed. Moreover, Taylor has acknowledged its intent to make the content of the experts' reports public during trial. This acknowledgment lends support for the conclusion that the experts' reports do not contain

---

[6] Exhibits N, O, P, and Q are expert reports created by Dr. Peter Smith, P.E., Dr. Richard Camilli, Brian Windham, and Dr. Christopher Reddy.

confidential information that must be protected from the public. Thus, the Court finds that Exhibits N, O, P, and Q are not confidential.

### 7. Exhibits R, S, T, and U: Documents Relied Upon by Expert Witnesses

Exhibits R, S, T, and U are the research the experts relied upon to draft the reports discussed above. After reviewing the documents, the Court finds that they do not contain confidential information. The information contained in the documents provides back-up data for the experts' reports, which the Court has already concluded is not confidential. Additionally, similar to the experts' reports, the documents will be subject to questioning during trial and will become public at that time. Thus, the Court finds that Exhibits R, S, T, and U are not confidential.

### 8. Exhibit V: Windham Deposition

Exhibit V is the deposition of Taylor's expert, Brian Windham. Taylor's argued that the confidentiality designations during the deposition were based the purported confidentiality of Windham's expert report, which is Exhibit P. Having found that Exhibit P is not confidential, the Court concludes that Windham's deposition is not confidential because any testimony that flows from Exhibit P is also not confidential.

### IV. Conclusion

Based on the foregoing and the Court's findings during the hearing,

**IT IS ORDERED** that Plaintiffs' **Third Motion Challenging Confidentiality (R. Doc. 180)** is **GRANTED in part and DENIED in part**. The Plaintiffs' request to lift the confidentiality designations for Exhibit A and Exhibits C-V is **GRANTED**. The Plaintiffs' request to lift the confidentiality designation for Exhibit B is **partially DENIED** and **partially**

**GRANTED**. The fourth and fifth full paragraphs on the second page of Exhibit B are confidential, and the remainder of Exhibit B is not confidential.

New Orleans, Louisiana, this 7th day of August 2015.

*[signature]*

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**
